UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VICKIE E. WHITE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   2:09-CV-02506-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Claimant, Vickie E. White, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and period of disability. Ms. White timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. White was forty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision and she has at least a high school education.

(Tr. at 14.)  Her past work experience includes employment as a secretary. *Id.* at 20.  Ms. White claims that she became disabled on June 19, 2006, due to generalized anxiety disorder, panic disorder with agoraphobia, and depression. *Id.* at 22.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments

meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ found that Ms. White met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. at 9.) He further determined that Ms. White had not

engaged in substantial gainful activity since the alleged onset of her disability. *Id*. Additionally, Claimant has the following severe impairments: "generalized anxiety disorder/panic disorder with agoraphobia, and depression." *Id*. According to the ALJ, Claimant's impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 9. The ALJ determined that Claimant has the residual functional capacity to perform less than a full range of medium work as defined in 20 CFR 404.1567(a), subject to the following limitations:

> With regard to mental capacity, the claimant is able to understand, remember, and carry out simple instructions but will have greater difficulty with more detailed and more complex instructions; sustain attention and concentration for 2-hour periods at a time to complete a normal workday at an acceptable pace and schedule; but may require regular, but not excessive work breaks during the workday; may be expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms; is able to appropriately manage at least casual and informal contact with the general public, with co-workers, and with supervisors; proximity to others should not be intensive or prolonged, as she may have difficulty interacting effectively with others when taxed or stressed; she will likely be able to accept and utilize supervision, and respond to appropriate levels of feedback and constructive instructions; is able to respond to at least simple and infrequent changes in work routine; and travel should probably be restricted to both local and familiar environments.

*Id*.

The ALJ accepted the vocational expert's testimony that, given Claimant's RFC, she is unable to perform any of her past relevant work. (Tr. at 14.) The ALJ determined Claimant is a "younger individual," and has "at least a high school education," as those terms are defined by the regulations. *Id*. After considering her "age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that claimant can perform." *Id*. Specifically, representative occupations such as a "semi-conductor wafer maker" and a "polisher of optical goods" were found to be compatible with Ms. White's RFC, each with hundreds of jobs regionally and around 380,000 jobs nationally. *Id*. at 15. After careful consideration of the entire record, the ALJ concluded that Claimant has not been under a disability from June 19, 2006 through the date of the decision. *Id*.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards

were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. White alleges that the ALJ's decision should be reversed because the ALJ failed to properly evaluate the credibility of her testimony regarding disabling symptoms consistent with the Eleventh Circuit Pain Standard.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony

of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court . . . ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Id*. (internal quotations omitted).

    In this case, the ALJ found that Ms. White's medically-determinable impairments could reasonably be expected to cause the alleged symptoms; however, he further determined that Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity

assessment. (Tr. at 12.)

While the ALJ explained that the medical evidence of record does not support a conclusion that Claimant is totally disabled as a result of her mental impairments, Claimant argues that the record supports her allegation of a disabling mental impairment. (Doc. 10 at 3.) Specifically, Claimant argues that the ALJ erred in disregarding the longitudinal medical history of her treating physician, Dr. Nolen. *Id*. at 7. Claimant's contention is misplaced. The ALJ discussed Dr. Nolen's treatment records at length. Although there is evidence that Claimant experienced mental impairments, the ALJ properly found that there is insufficient evidence to support a finding of disability.

Dr. Nolen's treatment notes evidence that there were times when Claimant experienced mental impairments. Dr. Nolen filled out paperwork in one month intervals to allow Claimant to be excused from work in order to "gain control of her life." (Tr. at 146.) On June 19, 2006, Claimant reported that she had an increase in mood swings, decrease in appetite, and problems sleeping at night. She described feeling like the "whole world was coming down on her." On July 24, 2006, Dr. Nolen noted that Claimant's depression

had not improved and referred her to Dr. Saxon for a psychological evaluation.[1] *Id.*

Dr. Saxon treated Claimant from July 28, 2006 through September 19, 2006. (Tr. at 12.) Dr. Saxon communicated his psychological findings to Dr. Nolen and expressed concern about "some personality problems." *Id.* Claimant reportedly was having panic attacks two to three times a week and was prescribed Paxil and Adderall. *Id.* On August 22, 2006, she reported some degree of depression; however, she also reported improved sleep and increased alertness as a result of medication. *Id.* On September 14, 2006, Dr. Nolen noted that Dr. Saxon told Claimant that "she could not go back to work for the county" and Claimant "does not feel like she will be able to go back to work period." Dr. Nolen also noted that Claimant's inability to resume work with the county was a "distinct possibility, particularly with her social anxiety disorder as part of her old anxiety situation." (Tr. at 146.) There is no evidence of Dr. Saxon's assessment of Claimant's functional capacity. Claimant testified at the ALJ hearing that Dr. Saxon stopped her treatment

---

[1]Dr. Saxon submitted his handwritten notes for the record, but they were illegible. As such, any evidence of Dr. Saxon's medical findings are evidenced through Dr. Nolen's treatment notes.

because she lost her insurance coverage. *Id.* at 26.

Despite Dr. Saxon's records, the record shows that Claimant's mental impairments were managed with medication. Dr. Nolen's treatment notes show that he prescribed multiple medications for Claimant in an attempt to control her mental impairments. (Tr. at 146.) During follow-up office visits, Claimant informed Dr. Nolen that her condition was improving. The ALJ specifically noted several occasions where Claimant indicated she was doing well on her medications. On December 29, 2006, it was noted that Claimant said "the medicine had made a tremendous difference and she would like to continue it." *Id.* at 13. On August 1, 2007, Claimant had no complaints and said "the medicine was working quite well." *Id.* On December 4, 2008, Claimant was doing well overall and had no new complaints. *Id.* Thus, the record shows that Claimant's mental impairments were managed well with medication.

Claimant also argues the ALJ erred in giving only minimum weight to the medical source statement of Dr. McDonald, the consultative psychologist. (Doc. 10 at 7.) Dr. McDonald opined that Claimant "is unable to maintain employment at the time of the CE [Consultative Evaluation] due to significant

anxiety symptoms that caused frequent and severe panic attacks. This anxiety also interfered with her ability to function in other domains, such as home life and social interactions." (Tr. at 13.) She further opined that Claimant would have difficulty understanding and remembering work-related instructions, as well as some difficulty carrying out work-related tasks. *Id.* Dr. McDonald diagnosed Claimant with "panic disorder with agoraphobia, major depressive disorder, single episode, moderate; MVP, acid reflux, migraine headaches and a global assessment of functioning (GAF) of forty-five."[2] *Id.*

The ALJ accorded minimum weight to Dr. McDonald's opinion because he found it was "unsupported by the objective medical evidence, specifically medical evaluations and treatment notes." (*Id.*) Dr. McDonald's ultimate findings were incognizant of her record as a whole, in addition to the fact that she only saw Claimant once and her findings were based primarily on Claimant's own complaints. (Tr. at 152-59.) Dr. McDonald found that

---

[2]A GAF of 45, without additional indices of impairment is not an absolute bar to substantial gainful employment, its diagnostic hallmarks are "[s]erious symptoms or any serious impairments in social, occupational, or school functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 2000, Text Rev.).

Claimant evidenced no attention or concentration problems during the evaluation. *Id*. at 157. Claimant "was oriented to day, date, time, and place." *Id*. Claimant was found to have an average fund of information. *Id*. Additionally, Dr. McDonald found that Claimant evidenced no significant communication problems and demonstrated adequate comprehension and expression of absent information. *Id*. Thus, Dr. McDonald's ultimate findings do not take a full account of Claimant's ability.

Dr. McDonald's assessment is also inconsistent with objective medical evidence of record. Claimant informed her treating physician, Dr. Nolen, of noted improvement in her condition at her follow-up office visits. (Tr. at 7.) Moreover, Dr. Nolen's treatment notes indicate that Claimant does well on her medication. *Id*. Claimant's latest treatment notes indicate that she was doing well overall. *Id*. Thus, there is substantial evidence to support the ALJ's decision.

Claimant also argues that the ALJ erred in giving great weight to Dr. Popkin, the state agency psychologist. (Doc. 10 at 8.) On December 26, 2006, Dr. Popkin reviewed the medical evidence and indicated on a Psychiatric Review Technique Form that Claimant had moderate "restriction[s] of

activities of daily living, difficulties in maintaining social functioning, [and] difficulties in maintaining concentration, persistence, or pace." (Tr. at 171.)

Dr. Popkin's functional capacity assessment opines:

> The claimant is able to understand, remember, and carry out simple instructions but will have greater difficulty with more detailed and more complex instructions. The claimant is able sustain attention and concentration for 2-hour periods at a time to complete a normal workday at an acceptable pace and schedule. CT may require regular, but not excessive work breaks during the workday. CT may be expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms. The claimant is able to appropriately manage at least casual and informal contact with the general public, with co-workers, and with supervisors. Proximity to others should not be intensive or prolonged, as CT may have difficulty interacting effectively with others when taxed or stressed. CT will likely be able to accept and utilize supervision, and respond to appropriate levels of feedback and constructive instructions. The claimant is able to respond to at least simple and infrequent changes in work routine. Travel should probably be restricted to both local and familiar environments.

*Id.* at 177.

RFC can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [her] impairments provided by [claimant or her] family, neighbors, friends, or other persons" will be considered. *Id*. Dr. Popkin

reviewed Dr. Nolen's treatment notes, Dr. McDonald's consultative report and a third- party function report prepared by Claimant's mother. (Tr. at 173.) The ALJ took this into account in according great weight to Dr. Popkin's assessment.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Based on the foregoing reasons, Claimant's allegation must fail.

IV. Conclusion.

Upon a thorough review of the administrative record, and after considering all of Ms. White's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. A separate order will be entered.

Done this 24th day of May 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671